IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LYNN MALASPINA,                         Civil Action

        Plaintiff,                    No. 13-1695

   v.                                   Judge Schwab

UPMC COMMUNITY MEDICINE, INC.,
d/b/a UPMC BURRELL MEDICAL CENTER,

        Defendant.                    JURY TRIAL DEMANDED


**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO PROTECTIVE ORDER**


Samuel J. Cordes
Christine T. Elzer

Pa. I.D. No. 54874   (Cordes)
Pa. I.D. No. 208157 (Elzer)

Samuel J. Cordes & Associates
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

I. Introduction

This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) et seq. Plaintiff, Lynn Malaspina, alleges Defendant, UPMC Community Medicine, Inc., engaged in various acts of discrimination against her because of her hearing disability. Relevant to Defendant's Motion, Malaspina alleges Defendant failed to provide her a captioned telephone,[1] and therefore failed to make a reasonable accommodation to her disability, in violation of 42 U.S.C. § 12112(b)(5)(A). (Amended Complaint ¶¶12-13, 23). Malaspina has also alleged a separate ADA violation, claiming Defendant discriminated against her because of her disability by discharging her from her nursing position and demoting her to another position, in violation of 42 U.S.C. § 12112(a). (*Id.* ¶¶18, 22).

As further explained below, Defendant plans to defend the failure to accommodate claim by arguing that providing the captioned telephone would violate the Health Insurance Portability and Accountability Act, 29 U.S.C. § 1181 ("HIPAA"). All relevant witnesses have testified that they denied the request for the captioned telephone solely in reliance on advice of counsel. Discovery has revealed Defendant's in-house attorney, Marianne Malloy, advised Defendant's employees not to provide the captioned telephone, because doing so would violate HIPAA.

Importantly, Malaspina does *not* claim Malloy made the decision to *discharge her from her nursing position*. Rather, Malloy decided *not to accommodate* Malaspina, and therefore committed a separate violation of the ADA.[2] As such, Defendant's seven-page recitation of the testimony

---

[1] The captioned telephone is sometimes referred to as "CapTel," "Caption Call," "TRS," or "relay service."

[2] As noted above, Plaintiff has alleged two separate ADA violations: failure to accommodate, in violation of 42 U.S.C. § 12112(b)(5)(A); and discriminatory discharge, in violation of 42 U.S.C. § 12112(a). Plaintiff seeks to depose Malloy only with respect to the failure to accommodate decision.

1

regarding who made the decision to remove Malaspina from her nursing position is simply irrelevant. Rather, the issue is whether Malloy decided not to accommodate Malaspina, and/or whether Defendant decided not to accommodate Malaspina in reliance on Malloy's advice.

After confirming that Defendant plans to assert a HIPAA-related defense, and after verifying with the witnesses that they solely relied on counsel in failing to provide the captioned telephone, Plaintiff noticed Malloy's deposition.

Defendant has now filed a Motion for Protective Order, essentially seeking to have it both ways. It wants to claim it denied the accommodation because of HIPAA concerns, while at the same time preventing Malaspina from examining what those concerns were. It somehow plans to put on a defense about its motivation, without having any witness testify about that motivation.

By *making* an employment decision, rather than simply providing legal advice about a planned decision, Malloy acted outside the scope of giving legal advice. Therefore, the attorney-client privilege does not apply in the first place. Additionally, by raising the HIPAA-related defense, Defendant has affirmatively put its attorney's advice at issue. As such, it has waived the attorney-client privilege to the extent it would otherwise apply. Finally, because Defendant's managerial employees disclosed Malloy's advice to Malaspina, it again waived the privilege.

For the foregoing reasons, Malaspina should be allowed to depose Malloy, and Defendant's Motion for Protective Order should be denied. In the alternative, should the Court determine the attorney-client privilege applies, Defendant should be precluded from arguing at trial or in a summary judgment motion that it failed to provide the captioned telephone because of HIPAA concerns, or in reliance on advice of counsel.

## II. Legal Standard

As Defendant notes, this Court may only issue a protective order upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1). While the protection of a privilege may constitute good cause, "because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). "[T]he party asserting the attorney-client privilege bears the burden of proving that it applies." *United States v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989). Thus, in this case, to show good cause for a protective order, Defendant must prove the attorney-client privilege applies.

## III. Argument

**A.     The Record Evidence Shows Defendant Intends to Defend its Decision Not to Accommodate Malaspina Based on HIPAA Concerns, and That Those Concerns Came Solely From Counsel.**

   **1.     Defendant claims it failed to accommodate Malaspina because of HIPAA concerns.**

As Defendant notes in its brief, "Defendant believes the active involvement of the TRS operator presented potentially liability under [HIPAA] that could not reasonably be overcome in the circumstances of Plaintiff's job at Burrell Medical Center. Consequently, for this and other reasons, Defendant concluded that TRS equipment and services would not be a reasonable accommodation for Plaintiff's hearing impairment." (Def. Brief [Doc. 27] at 2-3).

Defendant has likewise made its position clear in discovery responses. When asked in an Interrogatory, "Do you contend that allowing Plaintiff to use a captioned telephone service device such as CapTel or Caption Call would violate [HIPAA]?," Defendant responded:

> Yes. Defendant relies primarily on the fact that, at or about the time of Plaintiff's requested accommodation, the requested telephone service required the participation of a Caller Assistant in every captioned telephone call ... Defendant

3

has not determined whom, if anyone, it will call as witnesses at the trial of this action on the matter described in this interrogatory.

(Defendant's Responses to Plaintiff's Interrogatories No. 12, App. Ex. 1).

Moreover, Defendant claims that providing a captioned telephone would not be a reasonable accommodation because, *inter alia*, "Plaintiff's use of it in the performance of her job duties would result in the unlawful disclosure of protected health information about Defendant's patients." (Defendant's Responses to Plaintiff's Interrogatories No. 10, App. Ex. 1). Likewise, Defendant claims providing the captioned telephone would be an undue hardship because "[i]t would put Defendant and its patients at risk of the unlawful disclosure of protected health information." (Defendant's Responses to Plaintiff's Interrogatories No. 11, App. Ex. 1).

Prior to Defendant's filing of its Motion for Protective Order, Malaspina's counsel stated to Defendant's counsel: "If you want to stipulate that you are not going to put on evidence or argument that the CapTel and other relay services violated HIPPA and/or that the reason the accommodation was denied was because of HIPAA or other privacy concerns, then we can probably forego this issue." (See email from C. Elzer to J. Myers, Def's Appendix [Doc. 27-1] at 45). Defendant did not offer to stipulate that it would not offer such evidence or argument, and instead filed its Motion. Thus, it is clear that Defendant still intends to offer evidence and/or argument that the captioned telephone was denied because of HIPAA/privacy concerns.

> **2. Defendant failed to provide the accommodation solely in reliance on advice of counsel.**

Defendant claims its employment decisions were made by Malaspina's "upward chain of command," including Pamela Newell, Michele Rubio, and Jennifer Freel; human resources representative Daniele Crisi-Couchenour, and Work Partners representative Anna Marie Saporito.

(Def. Brief [Doc. 27] at 8, n. 7).  However, Defendant's brief focuses on Defendant's decision to *discharge* Malaspina, rather than its decision *not to accommodate* her. With respect to the failure to accommodate, all deposed decision-makers have testified that they did not decide to deny the captioned telephone, and/or that they relied on advice of counsel in denying the accommodation.

Malaspina's immediate supervisor, Pamela Newell, testified she "didn't really handle that whole what we could and could not do ... with regards to the [captioned] phone," and she only knew the issue was "given to legal to look and investigate." (Newell 149/ln 24-151/ln 8, App. Ex. 2).

Likewise, the next supervisor in the chain, Michele Rubio, testified she did not know why Defendant did not provide a captioned telephone. (Rubio 43/ln 22-44/ln 3, App. Ex. 3).

The Human Resources representative, Daniele Crisi-Couchenour, testified she never did anything on her own to determine whether the captioned telephone would create a HIPAA or privacy concern. Rather, she followed the advice given by counsel. (Crisi-Couchenour 67/ln 21-25, App. Ex. 4).  She also did not talk to anyone else outside the presence of counsel about a potential HIPAA violation associated with the captioned telephone. (*Id.* 34/ln 14-35/ln 25).

Executive administrator Jennifer Freel testified *she relied on advice of counsel* "to decide what to do with Lynn Malaspina's position." (*Id.* 58/ln 25-59/ln 9).  She also said Defendant did not offer the captioned telephone because "it is [her] understanding" that Rubio and Crisi-Couchenour consulted with the legal department and a privacy officer, and the technology was not compliant for communicating with patients. (*Id.* 54/ln 22-55/ln 19).  According to Freel, Crisi-Couchenour and Rubio consulted with privacy officer Ann Rice and an unnamed employment attorney in the legal department regarding the use of the captioned telephone. (*Id.* at 57/ln 20-58/ln 24).  However, Rice submitted an affidavit swearing that she did not participate in the decisions or deliberations

regarding whether to allow Malaspina to use telecommunications relay equipment or services. (Rice Affidavit, App. Ex. 5). Further, Crisi-Couchenour testified she did not talk to Rice about the HIPAA/CapTel issue. (Crisi-Couchenour 35/ln 12-15, App. Ex. 4). Thus, it is clear that Freel did not rely on privacy officer Rice, but only relied on what she heard second-hand about what counsel said.

Despite Defendant's insistence that Freel was the "decision-maker with regard to the attempted accommodations and ultimate employment decisions," (Def. Brief at 10), Freel testified it was not her decision whether the captioned telephone would be implemented or not.[3] (*Id.* at 56/ln 22-57/ln 5, App. Ex. 4). Instead, it appears Crisi-Couchenour spoke with counsel, and then relayed to Freel what counsel said.

The only remaining alleged decision-maker, Anna Marie Saporito, will be deposed on July 11, 2014. Defendant has not suggested that Saporito will testify during her deposition that she made the decision to deny the captioned telephone accommodation without relying on counsel. Indeed, if Saporito were to testify as such, it would contradict her written documents.

Documents produced in discovery point to Saporito relying on advice of counsel in denying the captioned telephone. In an email dated September 25, 2012, Saporito stated "As far as [Malaspina's] communication over the phone, the Captel phone may be a good solution." (9/25/12 email, App. Ex.6). Then, in notes dated November 19, 2012, Saporito wrote that she discussed the use of CaptionCall "with Marianne in legal. She still is concerned about liability related to HIPAA and patient care." (Work Partners Notes, App. Ex.7). Moreover, after Saporito asked Crisi-

---

[3]The testimony referenced above relates to a Freel's deposition exhibit 4, an opinion by the Department of Health and Human Services noting, *inter alia*, "the sharing of protected health information between a covered health care provider and a patient through the TRS is permitted by the Privacy Rule [of HIPAA] under 45 C.F.R. § 164.510(b)." (See DHS website excerpt, App. Ex. 8).

Couchenour about the UPMC policy for use of relay equipment and HIPAA, Crisi-Couchenour and Malloy had several email exchanges, which Defendant redacted. (11/19/12 emails, App. Ex. 9). This is further evidence that Malloy advised Defendant regarding whether the captioned telephone violated HIPAA.

As set forth above, Defendant's decision to deny Malaspina the requested accommodation was made solely in reliance on advice of counsel, and/or was made solely *by* counsel. Either way, the attorney-client privilege is not a bar to the taking of Malloy's deposition. As explained further below, the privilege either does not apply to begin with, or it has been waived.

**B.     The Attorney-Client Privilege Does Not Apply Because Malloy Made the Decision not to Accommodate Malaspina.**

For the attorney-client privilege to apply in the first instance, the attorney must be "acting as a lawyer." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994)."Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made." *United States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003). Rather, "to determine whether communications were made primarily for the purpose of providing legal services, the court must consider the context in which they were made." *Id.*

"It is well-recognized that in-house counsel may serve both legal and business functions, and courts will scrutinize the nature of their communications before finding that those communications are privileged." *Koumoulis v. Independent Financial Marketing Group, Inc.*, 295 F.R.D. 28, 37 (E.D.N.Y. 2013). At least two employment cases have held that in-house attorneys who actually made employment decisions were not acting as lawyers, and thus, the attorney-client privilege did not apply. *See Neuder v. Battelle Pacific Northwest Nat'l Laboratory*, 194 F.R.D. 289 (D.D.C.

2000); *Marten v. Yellow Freight System, Inc.*, 96-2013, 1998 WL 13244 (D. Kan. 1998).

In *Neuder,* the decision to fire the plaintiff was made by a Personnel Action Review Committee ("PARC"). The employer's attorney attended the PARC meeting. *Id.* at 291. The court observed, "where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Id.* at 292. "[C]ommunications by a corporation with its attorney, who at the time is acting solely as a business advisor, would not be privileged." *Id.* "When the legal advice is merely incidental to the business advice, the privilege does not apply." *Id.*

Examining the facts of the case, the court held the "committee's primary function was to terminate Mr. Neuder. .... [A]lthough legal review was one purpose for the meeting, it was merely incidental to the primary business function." *Id.* at 293. The court relied on the fact that the PARC's purpose was to review and concur in termination decisions, and to approve proposed terminations. Moreover, witnesses testified that the PARC functioned primarily in a business capacity. Finally, the termination letter reflected that the PARC terminated the plaintiff. *Id.* at 293. Because the attorney participated in a business decision, the attorney-client privilege did not apply.

*Marten* also involved an in-house attorney's participation in a committee meeting, this time called the Employee Review Committee ("ERC"). *Marten,* 1998 WL 13244 at *2. The employer argued the role of in-house counsel "was not to determine whether the discharge of plaintiff was a good business decision, but rather to ensure that the reasons and decision to discharge him were legally sound under the facts of the case." *Id.* at *7.

The court disagreed, holding:

> the primary function of the committee ... appears to be a decision of what employment action to take against an employee. Notwithstanding the legal implications of such employment action, the business purposes of such a decision predominate the legal issues. In the context of a required meeting to

> determine possible employment actions, legal advice sought or received during such meeting appears to be incidental to the considerations of what is most prudent for the successful operation of the business. A conference between client and counsel does not necessarily equate with a conference attended by counsel. The ERC meeting appears to be the latter. It serves to make a personnel decision. With an attorney present, the meeting nevertheless proceeded to determine whether to terminate the employment of plaintiff.

*Id.* at *8.

The court also observed that the in-house attorney was a voting member of the ERC. *Id.* at *8. According to the court, the status as a voting member made the indication "even stronger" that the attorney was acting in a non-legal capacity. *Id.* at *9.

Here, the same rationale applies. Although no formal "committee" was in place here, the courts in *Neuder* and *Marten* did not focus on the formalities of the committees, but rather on the attorney's role in the employment decisions. Additionally, although the cases were decided in different jurisdictions, the elements of the attorney-client privilege are nearly identical to the law in Pennsylvania and the Third Circuit. Specifically, the privilege in each jurisdiction requires the attorney to be acting "as a lawyer" or "in his capacity" as a professional legal advisor. *Compare Rhone-Poulenc,* 32 F.3d at 862 *with Neuder,* 194 F.R.D. at 292; *Marten*, 1998 WL 13244 at *5. Moreover, Defendant was fully aware that Plaintiff would rely on *Neuder* and *Marten*, and has made no effort to distinguish them. (See email from C. Elzer to J. Myers, Def's Appendix [Doc. 27-1] at 45 (citing *Neuder* and *Marten*)). Instead, Defendant has claimed Malloy did not make the decision to fire Malaspina, when the issue here is whether Malloy decided not to accommodate her.

As in *Neuder* and *Marten,* Malloy did not merely provide advice to confirm that Defendant's planned actions were legal, but instead actually made the determination not to allow Malaspina the accommodation. As noted above, all witnesses have testified that they did not make the decision,

9

but rather that legal counsel did. (Newell 149/ln 24-151/ln 8, App. Ex. 2); (Rubio 43/ln 22-44/ln 3, App. Ex. 3); (Crisi-Couchenour 67/ln 21-25, App. Ex. 4); (Freel 54/ln 22-55/ln 19, 57/ln 20-58/ln 24, App. Ex. 10).[4]

As such, it appears that Malloy–and Malloy alone–made the decision not to accommodate Malaspina. Defendant does not seem to contest that if any other person decided not to accommodate Malaspina, their motivations would be fair game, and they would be subject to a deposition. Defendant wants to treat Malloy differently simply because she is an attorney. However, her decision not to accommodate an employee goes beyond legal advice, and crosses the line into a business decision. Therefore, the attorney-client privilege does not apply, and Malaspina should be permitted to depose Malloy.

    **C.    Defendant Has Waived the Attorney-Client Privilege With Respect to Malloy's Advice Regarding the Captioned Telephone and HIPAA.**

Even if the attorney-client privilege would otherwise apply to Malloy's communications, Defendant has waived that privilege by asserting it relied on Malloy's advice. The Third Circuit has held that when a party takes "the affirmative step in the litigation to place the advice of the attorney in issue," the attorney-client privilege is waived. *Rhone-Poulenc*, 32 F.3d at 863. "The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.*

In other words, "[t]he attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that ... the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct."

---

[4]The testimony of Freel cited above also references involvement by privacy officer Ann Rice. However, as noted above, Rice was not involved in the decision not to accommodate Malaspina.

10

*Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996).

Even when a party does not explicitly disclose the precise content of an attorney-client communication, the privilege is waived if the party intends to rely on its understanding of the law as a basis for a claim or defense. For example, when a plaintiff claimed she did not voluntarily enter into a settlement agreement because she did not appreciate its legal implications, the Third Circuit held this claim was "tantamount to a claim that her attorney did not give her accurate legal advice." *Livingston*, 91 F.3d at 537. Thus, the Court held "it would be unfair to allow [plaintiff] to make this claim without permitting the opposing parties to investigate her attorney's version of the relevant events." *Id.* Although the plaintiff did not explicitly invoke any attorney-client communications, the "the advice provided to her by her attorney is 'relevant to the legal significance of [her] conduct,'" and therefore, the privilege was waived. *See id.*

In reaching its holding in *Livingston,* the Third Circuit relied on the Court of Appeals for the Second Circuit's opinion in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), *cert. denied*, 502 U.S. 813 (1991). *See Livingston*, 91 F.3d at 537 (citing *Bilzerian*, 926 F.2d at 1292). Thus, when a criminal defendant testified that he believed his actions were legal, he "put his knowledge of the law and the basis for his understanding of what the law required in issue." *Bilzerian*, 926 F.3d at 1292. Thus, "his conversations with counsel regarding the legality of his schemes" were relevant. *Id.* Therefore, the Second Circuit affirmed the trial court's holding that if the defendant testified about his intent, he would open the door to cross-examination on the reasons for his state of mind, and would thus waive the attorney-client privilege. *Id.* at 1294.

As one court in this Circuit has held, "the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation." *Murray v. Gemplus*

*Intern., S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003). As such, "when one party intentionally discloses privileged material with the aim, in whole or in part, of furthering that party's case, the party waives its attorney-client privilege with respect to the subject-matter of the disclosed communications." *Id.* "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Koumoulis*, 295 F.R.D. at 40.

      Here, Defendant intends to use Malloy's advice as a sword, while at the same time attempting to shield that same advice from discovery. Because Defendant cannot have it both ways, the attorney-client privilege is waived. Despite its denial that it is using the privilege as a "sword" (Def. Brief at 7, n. 6), Defendant is selectively using Malloy's advice to gain an advantage. It intends to offer testimony from each decision-maker that the accommodation was denied for no reason other than "my lawyer said so." *See* (Newell 149/ln 24-151/ln 8, App. Ex. 2); (Crisi-Couchenour 67/ln 21-25, App. Ex. 4); (Freel 54/ln 22-55/ln 19, App. Ex. 10). At the same time, Defendant wants to shield Malaspina and the fact-finder from learning what the lawyer said. Defendant therefore seeks to use legal advice as a talisman, without further examination into what that legal advice was. However, by raising the HIPAA-related defense in the face of the fact that the understanding of HIPAA came from no one other than an attorney, Defendant has opened the door to examination into what the attorney said.

      It is abundantly clear from the record that Defendant plans to defend its failure to provide an accommodation by claiming such an accommodation would be "unlawful" and would violate HIPAA. By making this claim, Defendant has unmistakably placed the advice of its counsel, as well as its understanding of the law, at issue. *See e.g., Livingston*, 91 F.3d at 537; *Bilzerian*, 926

F.3d at 1292 (attorney-client privilege waived when party asserts its understanding of the law). As such, Defendant has waived the attorney-client privilege, and it should be required to produce Malloy for a deposition.

### D. Defendant Has Waived the Attorney-Client Privilege By Disclosing Malloy's Advice to Malaspina.

If a client discloses an attorney-client communication to a third party, the privilege is waived. "[V]oluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege." *Westinghouse*, 951 F.2d at 1424. "When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege. For example, courts have held that the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege." *Id.* However, when disclosure is made for reasons other than informed legal advice, the privilege is waived. *See id.* at 1425-27.

Courts in this Circuit have held that when an attorney's advice is shared with employees who do not need to know the information, the privilege is waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005)("privilege is waived if the communications are disclosed to employees who did not need access to them"); *TransWeb, LLC v. 3M Innovative Properties, Inc.*, 2012 WL 2878076 at *6 (D. N.J. Apr. 12, 2012)("a corporation may waive the attorney-client privilege by disclosing otherwise protected communications to employees who do not possess the need to know the information"); *Schwarz Pharma, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2007 WL 2892744 at *4 (D.N.J. Sep. 27, 2007)("a corporation waives the attorney-client privilege by disclosing otherwise protected communications to employees who do not need to know the information").

Likewise, when a client discloses an attorney's advice to the person about whom the advice is sought, the privilege is waived. *See Ezell v. Darr*, 2012 WL 123374 (M.D. Ga. Jan. 17, 2012). In *Ezell*, a sheriff-employee who received an attorney's advice then disclosed that advice to one of the plaintiffs. *Id.* at *3. He also "did not indicate to [the plaintiff] any intent for the communications to remain confidential." *Id.* The Court further noted that under Supreme Court precedent, the power to waive the attorney-client privilege rests with the corporation's management. *See id.* (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). Thus, because the sheriff, a management employee, disclosed the attorney's communication to a third party, the privilege was waived. Moreover, it did not matter that the sheriff disclosed the information to the plaintiff while she was still an employee of defendant. He did not disclose that information for the purpose of obtaining legal advice, and instead made the disclosure "presumably because he felt [the plaintiff and other employees] deserved a heads up that their jobs may be in jeopardy." *Id.* at *3. Thus, the attorney-client privilege was waived.

Here, Defendant's employees told Malaspina about Malloy's advice. Specifically, Work Partners representative Anna Marie Saporito; supervisor Pamela Newell; and Human Resources Representative Daniele Crisi-Couchenour told Malapsina that she could not have the captioned telephone because the legal department had determined it would be a HIPAA violation. (Malaspina Affidavit ¶¶1-3, App. Ex. 11). Indeed, Malaspina even asked Crisi-Couchenour if she could speak with the legal department regarding the HIPAA concerns. That request was denied because it was not "normal practice." (12/17/12 emails, App. Ex. 12); (Crisi-Couchenour 75/ln 1-15, App. Ex. 4).

As in *Ezell*, Defendant here did not disclose Malloy's advice to Malaspina for the purpose of obtaining legal advice. Instead, Defendant's employees presumably disclosed Malloy's advice

14

to Malaspina to give her a "heads up," *Ezell*, 2012 WL 123374 at *3, or to provide an explanation for why she was being denied the accommodation. Malaspina had no "need to know" the reason for the failure to accommodate, making Defendant's disclosure of Malloy's advice a waiver of the privilege. *See, e.g., SmithKline Beecham*, 232 F.R.D. at 476.

As Defendant notes, Saporito, Newell, and Crisi-Couchenour were "managers" in this case (Def. Brief at 7). Thus, they had the ability to waive the attorney-client privilege on Defendant's behalf. *See Weintraub*, 471 U.S. at 348. For this additional reason, Defendant has waived the attorney-client privilege, and Malaspina should be able to depose Malloy.

## VI. Conclusion

For the foregoing reasons, Malaspina respectfully requests that this Court deny Defendant's Motion for Protective Order, and permit her to take the deposition of Marianne Malloy. In the alternative, should the Court find the attorney-client privilege applies, Defendant should not be able to use Malloy's advice as both a sword and a shield. Thus, to the extent the privilege applies, Malaspina requests that Defendant be precluded from introducing evidence or argument regarding Malloy's advice and/or that the requested accommodation was denied because of HIPAA concerns.

Plaintiff has attached two alternative proposed orders: one in the event that the Court denies Defendant's Motion for Protective Order, and one in the event the Court grants the Motion.

Respectfully submitted,

**Samuel J. Cordes & Associates**

<u>/S/ Christine T. Elzer</u>
Samuel J. Cordes
Christine T. Elzer

Pa. I.D. No. 54874   (Cordes)
Pa. I.D. No. 208157 (Elzer)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify on this 10th day of July, 2014, I served a copy of the foregoing ***Brief in Opposition to Defendant's Motion for Protective Order*** via electronic mailing upon the following:

John J. Myers
William S. Myers
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
jmyers@eckertseamans.com
wmyers@eckertseamans.com


/S/ Christine T. Elzer
Christine T. Elzer