IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN MALASPINA, | Civil Action |
| Plaintiff, | No. 13-1695 |
| v. | Judge Schwab |
| UPMC COMMUNITY MEDICINE, INC., d/b/a UPMC BURRELL MEDICAL CENTER, | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Samuel J. Cordes
Christine T. Elzer

Pa.I.D. #54874 (Cordes)
Pa.I.D. #208157 (Elzer)

Samuel J. Cordes & Associates
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

## **TABLE OF CONTENTS**

I.   Introduction and Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Summary Judgment is Precluded on Malaspina's Discrimination Claim . . . . . . . 2

        1.   The record is replete with direct evidence of discrimination . . . . . . . . . 2

        2.   A reasonable jury could find Malaspina was a qualified individual
            with a disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   Summary Judgment is Precluded on Malaspina's Failure to Accommodate
        Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   Malaspina's requested accommodation of a captioned telephone
            was possible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.   Defendant cannot establish unreasonableness or undue hardship on
            a summary judgment record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.   Defendant's significant risk claim, without more, does not excuse its
            failure to accommodate Malaspina's hearing disability . . . . . . . . . . . . 12

    C.   Summary Judgment is Precluded on Malaspina's Retaliation Claim . . . . . . . . . 13

## I. Introduction and Factual Background

Defendant, UPMC Community Medicine Inc., admits it removed Nurse Lynn Malaspina from her position solely because of her hearing impairment. According to Defendant, Malaspina was "no longer able to perform the essential functions of [her] position" because of her hearing disability. Executive Administrator Jennifer Freel, who decided to fire Malaspina, admits she made a calculated cost-benefit decision, weighing the risk of firing a hearing impaired employee against the perceived risk of liability if Malaspina were to harm a patient because of her hearing impairment.

Malaspina's most significant hearing-related issue concerned communicating over the phone. She therefore requested accommodations to make her telephone responsibilities easier, including the provision of a captioned telephone that would transcribe the words of the person on the other end of the call. Defendant denied this accommodation, and blamed its decision on its in-house counsel. However, that counsel testified she never advised not Defendant not to provide this accommodation.

Malaspina alleges Defendant discharged her from her nursing position and demoted her because of her disability; failed to make reasonable accommodations to her disability; and retaliated against her for requesting reasonable accommodations, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), and 42 U.S.C. §12203(a); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §955(a) *et seq*. Defendant has moved for summary judgment, claiming it is entitled to judgment as a matter of law on Malaspina's claims. However, as further explained below, a reasonable jury could find in Malaspina's favor on all of her claims. Therefore, Defendant's Motion for Summary Judgment should be denied.

## II. Argument

### A. Summary Judgment is Precluded on Malaspina's Discrimination Claim.

#### 1. The record is replete with direct evidence of discrimination.

Malaspina can meet her burden of proving her disability was a determinative factor in Defendant's decision to fire her by presenting *either* direct or indirect evidence of discrimination. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002). Direct evidence is "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on the plaintiff's [disability] in reaching their decision..." *Fakete*, 308 F.3d at 338; *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995).

Defendant summarily claims Malaspina "cannot point to any direct evidence of a discriminatory reason for her removal from the nursing job." However, Defendant has repeatedly admitted that it fired Malaspina because of her disability. For example:

- When notifying Malaspina in a letter that her employment would end on January 31, 2013, Work Partners representative Anna Marie Saporito stated: "You are no longer able to perform the essential functions of your position as a Professional Staff Nurse because you cannot engage in effective verbal communication with patients, coworkers, and providers." (December 28, 2012 Letter from A. Saporito to L. Malaspina, App. Ex.1).

- In Responses to both Requests for Admissions and Interrogatories, Defendant admits it removed Malaspina from her nursing position because it believed she could not perform the essential functions of her position with or without reasonable accommodation.[1] (Defendant's Response to Request for Admissions No. 7, App. Ex. 8); (Defendant's Response to Interrogatory No. 3, App. Ex. 11).

- Executive Administrator Jennifer Freel admitted she was worried about UPMC

---

[1] Defendant also claims it removed Malaspina from her nursing position because she accepted a transfer to a Data Abstractor job. *See id.* Temporally, this does not make sense. On December 28, 2012, Defendant notified Malaspina her employment with Burrell Medical Center would end January 31, 2013 (December 28, 2012 Letter from A. Saporito to L. Malaspina, App. Ex. 1). Malaspina did not accept the Abstractor position until almost a month *later*, on January 23, 2013. (2/7/13 Letter from A. Saporito to L. Malaspina, App. Ex. 38).

2

getting sued because she was terminating Malaspina *because of her hearing impairment*. (JF 41/ln 3-6, App. Ex. 2).

- Freel admitted that in deciding to fire Malaspina, she weighed the cost of Defendant being held legally responsible for firing Malaspina *because of her hearing impairment* against the possibility that Malaspina might harm a patient if she did not hear the patient correctly. (JF 70/ln 4-11, App. Ex. 2); (11/28/12 email chain, App. Ex. 33).

- Malaspina's direct supervisor, Pamela Newell, admitted she removed Malaspina from patient contact because "she could not hear." (PN 135/ln 25-136/ln 3, App. Ex. 3).

- Malaspina's second-level supervisor, Michelle Rubio, claimed Malaspina could not do her job because she could not hear. (MR 41/ln 2-11, App. Ex. 4).

In short, this is simply not a case where the employer claims it fired an employee for a reason unrelated to her disability. Rather, Defendant plainly and admittedly fired Malaspina because of her hearing impairment. Thus, a reasonable jury could find Defendant "placed substantial negative reliance" on Malaspina's hearing disability in deciding to fire her. *See Fakete*, 308 F.3d at 338.

According to Defendant, Malaspina's claims depend on evidence of "disability-related animus." (Def. Brief at 10). But Malaspina bears no such burden. Defendant conflates animus with the intent to discriminate. However, animus is not synonymous with the intent to discriminate. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987).

Indeed, the Third Circuit has held a plaintiff need not be the victim of negligence or malice; an employer's innocent mistake ("which may be the function of 'goofs' or miscommunications") is sufficient to subject it to ADA liability. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 182 (3d Cir. 1999); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143, n. 4 (3d Cir. 1998)(en banc)(whether employer was motivated by myth, fear or prejudice is not determinative of employee's ADA claim).[2]

---

[2] Indeed, UPMC raised this very issue before , and Judge Standish rejected it. In *Patterson v. UPMC S. Hills Health Sys. Home Health, L.P.*, 2005 WL 6720844 at *8 (W.D. Pa. May 15, 2005), the court held UPMC could be liable for discrimination even absent animus. *Id.* at *8.

The distinction between animus and the intent to discriminate is particularly important given the history of the ADA. In drafting the ADA, "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, *not of invidious animus*, but rather of thoughtlessness and indifference-of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985); *see also Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) (same). As the Supreme Court noted, "discrimination against the handicapped is primarily the result of apathetic attitudes *rather than affirmative animus*." *Id.* at 296. Thus, Defendant is simply wrong when it attempts to foist upon Malaspina a requirement of showing individual animus. The issue is not whether Defendant disliked Malaspina because she or her hearing impairment was, in Freel's words, "a big problem" (App. Ex. 33), but, rather, whether her disability was a motivating or determining factor in UMPC's decision to fire her. *See, e.g., Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

Here, given Defendant's repeated admissions that it fired Malaspina because of her hearing impairment, a jury could easily find Malaspina's hearing impairment was a motivating or determinative factor in Defendant's decision to fire her.

### 2. A reasonable jury could find Malaspina was a qualified individual with a disability.

With respect to Malaspina's disability discrimination claim, the only dispute is whether she was a "qualified individual with a disability;" that is, whether she could perform the essential functions of her position with or without reasonable accommodation. *See* 42 U.S.C. § 12112(8).

Defendant claims it fired Malaspina from the nursing position because she could not "engage in effective verbal communication with patients, coworkers, and providers." (December 28, 2012 Letter from A. Saporito to L. Malaspina, App. Ex. 1). However, Defendant did not identify "engaging in effective verbal communication" as an essential function on the job description that *it* created. (App. Ex. 15). Asked to identify the essential functions of Malaspina's position, Defendant

4

simply referred to its job description. (Def's Responses to Interrogatories No. 6, App. Ex. 11).

While a factfinder could infer from Malaspina's job description that effectively communicating with patients, coworkers, and providers is an essential function of the position, nothing in the record supports that the communication must be *verbal.* Indeed, both Newell and Rubio admit Dr. Dunn could have given Malaspina written rather than verbal orders to solve the problem. (PN 153/ln 13-154/ln 7, App. Ex. 3); (MR 35/ln 2-5, App. Ex. 4). Dr. Dunn himself admits he could have sent Malaspina text messages rather than speaking to her, but he did not, and no one suggested that he should. (RD 32/ln 23-33/ln 11, App. Ex. 31).

Moreover, Malaspina could more easily communicate with coworkers if they looked at her directly when speaking. (LM 39/ln 18-40/ln 1, App. Ex. 12). However, staff members, including medical assistants and Dr. Dunn, did not always do that. *Id.* at 40/ln 8-23.

On or around September 13, 2012, Malaspina received new hearing aids. (9/13/12 email between P. Newell and A. Saporito at 7652, App. Ex. 29). It took Malaspina a few months to learn how to adjust those hearing aids. (LM 71/ln 6-12, App. Ex. 12). Within two months of receiving the hearing aids, Defendant had removed her from patient care. (AS 86/ln. 24-87/ln. 3, App. Ex. 10). Thus, a jury could conclude Defendant removed Malaspina from patient care just as she was learning to use her new hearing aids. A defendant-employer cannot prevent an accommodation from working and then therefore claim the disabled employee is not qualified .[3]

The bulk of Defendant's complaints about Malaspina concern her difficulty hearing over the telephone. Malaspina knew she had issues with telephone communication, and therefore requested

---

[3]*Cf. Knabe v. The Boury Corp.*, 114 F.3d 407, 411 & n. 8 (3d Cir. 1997)(employee's decision to quit prevented court from determining if employer's response to complaint was adequate); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, (3rd Cir. 1999)(employer action that interferes with mitigation efforts prevents it from claiming failure to mitigate).

accommodations. (Request for Accommodation, App. Ex. 6). After a work site evaluation, audiologist Reva Rossman recommended two potential phone-related accommodations: using Bluetooth or telecoil technology on the phone, or a captioned telephone. (Assistive Technology Evaluation, App. Ex. 7). Defendant did not provide either accommodation. This failure to accommodate will be more fully addressed in Part B below.

      Defendant does *not* claim that Malaspina would be unable to perform the telephone communication portion of her job with the telephone accommodations recommended by Dr. Rossman. Indeed, Rubio admitted that if Malaspina were able to read a transcription of what the speaker was saying while he was speaking over the phone, telephone errors would not occur. (MR 36/ln 4-11, App. Ex. 4). Thus, a reasonable jury could find Malaspina would have been qualified to perform her telephone functions with accommodation.

      Dr. Dunn further admitted Malaspina was a good nurse, with a high depth and breadth of medical knowledge. (RD 47/ln 15-20, App. Ex. 31). He agreed she could take a patient's vital signs without the need to hear the patient. *Id.* at 38/ln 10-19. He further agreed she could give shots and immunizations and draw up medication quantities without talking to a patient, *id.* at 36/ln 12-37/ln 13, and could "probably" perform an EKG without concern. *Id.* 37/ln 14-38/ln 9.

      Indeed, Defendant believed Malaspina was doing such a good job that it promoted her just a month before her managers started complaining about her hearing. (Personnel/Position Action Request, App. Ex. 16); (DCC 19/ln 19-20/ln 8, App. Ex. 17). Defendant promoted Malaspina because she was doing a good job, showed initiative, and "really came to the plate." (PN 33/ln 5-7, App. Ex. 3); (MR 16/ln 11-17/ln 4, App. Ex. 4).

      Even in the midst of her complaints about Malaspina's hearing, Newell gave her a positive performance review, where she praised much of Malaspina's performance. (2012 Annual

Performance Review, App. Ex. 9). All negative comments were attributed directly to Malaspina's hearing impairment, *see id.*, even though Defendant was allegedly in the process of searching for accommodations for her hearing at that time. Even despite these hearing-related comments, Newell still gave Malaspina an overall rating of "Solid, Strong, Good Performer." Less than four months later, Defendant had removed Malaspina from patient contact. (AS 86/ln. 24-87/ln. 3, App. Ex. 10).

Given the timing of the promotion, the positive performance review, and the discharge all within ten months of each other, with no evidence of Malaspina's hearing deteriorating in the interim, a jury could disbelieve that Malaspina's hearing impairment suddenly made her unable to perform the functions of her job. Moreover, the testimony set forth above seriously undermines Defendant's claim that Malaspina was unable to perform the essential functions of her position, either with or without a reasonable accommodation.

As such, a reasonable jury could find Malaspina was qualified individual with a disability, and that Defendant fired her because of her disability. Therefore, Defendant's Motion for Summary Judgment should be denied with respect to Malaspina's discrimination claim.

**B.      Summary Judgment is Precluded on Malaspina's Failure to Accommodate Claim.**

In addition to prohibiting discrimination, the ADA imposes an affirmative duty on employers to provide reasonable accommodations to employees with disabilities. Reasonable accommodations can include "acquisition or modification of equipment or devices ... the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999).

"Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible,

7

interactive process that involves both the employer and the employee with a disability." *Taylor,* 184 F.3d at 311, *quoting* 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

In deciding whether a genuine issue of material fact exists regarding the reasonableness of a requested accommodation, courts in this Circuit examine whether the employee has made a facial showing that the proposed accommodation is ***possible***. *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 614 (3d Cir. 2006). If Malaspina can make such a *prima facie* showing, the burden shifts to Defendant to prove, "as an affirmative defense, that the accommodations requested by [Malaspina] are unreasonable, or would cause an undue hardship on the employer." *Id.*

### 1. Malaspina's requested accommodation of a captioned telephone was possible.

Here, Malaspina requested a captioned telephone, specifically one manufactured by CapTel. CapTel performs relay services under contract with FCC-certified Telecommunications Relay Service (TRS) Providers. (Colwell Declaration ¶7, App. Ex. 21). During a call placed on the CapTel system, a call assistant listens to what the hearing user says and repeats it verbatim to a voice recognition software trained to that call assistant's vocal profile. The words are then transcribed by computer software, and are sent to the hearing impaired person's CapTel phone. *Id.* at ¶5. The call assistant does not hear both sides of the telephone conversation. He or she only hears the voice of the hearing party, and does not hear what the hearing impaired person is saying. *Id.* at ¶6.

All captioned telephone service providers and their call assistants are required by federal law to keep call information confidential. *Id.* at ¶8. Both state and federal government oversight bodies routinely conduct compliance audits and have found CapTel's internal confidentiality policy compliant with FCC requirements. *Id.* at ¶9.

As Saporito learned in November 2012 from conversations with a representative from the Pennsylvania Office of the Deaf and Hard of Hearing, both CapTel and a similar service called

Caption Call were free for persons with hearing impairments, and there was a promotion for a free captioned phone until the end of the year. (AS 36/ln 17-37/ln 2, 43/ln 25-44/ln 16, 44/ln 20-45/ln 9, App. Ex. 10). Thus, a captioned telephone would have cost Defendant nothing.

Information technology employee Don Lecci spoke with CapTel's technical support group, and informed Saporito the phone "should work." (11/9/12 email chain between R. Rossman and A. Saporito at 8344, App. Ex. 22). For the foregoing reasons, a jury could easily find that providing a captioned telephone was a possible accommodation.

### 2. Defendant cannot establish unreasonableness or undue hardship on a summary judgment record.

Because the provision of a captioned telephone was possible, Defendant bears the burden of proving that accommodation was unreasonable or an undue hardship. *Turner*, 440 F.3d at 614. "[W]hen the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" *Stanziale v. Jargowsky*, 200 F.3d 101, 106 (3d Cir. 2000)(citation omitted). Here, Defendant cannot prove that a rational jury ***must*** find that the captioned telephone was unreasonable or an undue hardship. To the contrary, a jury could easily find that Defendant could have provided the captioned telephone without hardship.

At the outset, no one has taken responsibility for failing to allow Malaspina to use the captioned telephone. Newell and Rubio claim they were not involved in that decision. (PN 149/ln 24-151/ln 8, App. Ex. 3); (MR 43/ln 22-44/ln 3, App. Ex. 4). Crisi-Couchenour, Saporito, and Freel all tried to shift responsibility to UPMC in-house counsel Marianne Malloy. (DCC 67/ln 21-25, App. Ex. 17); (AS 52/ln 15-20, App. Ex.10); (JF 54/ln 22-55/ln 19, App. Ex. 2).

However, Attorney Malloy testified she never advised Defendant's employees not to accommodate Malaspina by allowing her to use the CapTel phone system (MM 14/ln 4-16, App. Ex.

9

28). Malloy did not make a recommendation one way or the other about whether Defendant should use the captioned telephone system, beyond informing it what the risks were. *Id.* at 74/ln. 6-10.

Freel also tried to blame the decision to deny the captioned telephone on Privacy Officer Ann Rice. (JF at 57/ln 20-58/ln 24, App. Ex. 2). However, Rice submitted an affidavit denying that she had anything to do with the denial of the captioned telephone. (Rice Affidavit, App. Ex. 27).

Because no one has taken responsibility for the denial of the accommodation, no one but Defendant's counsel (litigation counsel, as opposed to in-house counsel) has ever explained *why* the accommodation was denied. Thus, Defendant's arguments about the alleged unreasonableness or hardship of the accommodation are not supported by record evidence. When a reason has been cited in an employer's brief, but there is no record evidence from the employer *itself* substantiating that reason, summary judgment is inappropriate. *See Smith v. Davis*, 248 F.3d 249, 252 (3d Cir. 2001).

Moreover, as (now Chief) Judge Conti of this Court has held: "the fact that no one in defendant's upper-level management actually took responsibility for the ultimate decision ... is circumstantial evidence that supports the inference of [discrimination]." *See Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311, 323 (W.D. Pa. 2004). Here, a jury could find the proposed accommodation was reasonable, given the failure of anyone to own up to the decision to deny it.

Assuming Defendant can somehow offer its reasons for denying the captioned telephone into the record through admissible evidence, its alleged HIPAA-based reasons are not legally or factually sound.

Before Defendant denied the captioned telephone accommodation, it had in its possession the following opinion of the Department of Health and Human Services: "as permitted by 45 C.F.R. § 164.510(b), protected health information can be shared during a telephone communication using the TRS because the individual will have an opportunity to agree or object to disclosures of protected

health information ... Even where the covered health care provider initiates a call using the TRS without the individual's prior agreement, the individual will have an opportunity to object at the outset of the call." (App. Ex. 24).

Defendant also knew from Rossman that TRS providers are subject to confidentiality requirements. (11/9/12 email chain between R. Rossman and A. Saporito, App. Ex. 22).  With minimal research, Defendant could have learned the extent of those confidentiality requirements by consulting 47 C.F.R. § 64.604(a)(2).  Defendant also knew the conversations on the captioned telephone were encrypted, and were not stored or saved. (AS 45/ln 15-17, App. Ex. 10).  Despite having this information, Defendant denied the captioned telephone.

Without any record evidence to support its assertion, Defendant's Brief claims that a "one-time blanket consent form [would not] be feasible ...since first time callers would have to sign a form before they could explain why they need to see the doctor." (Def. Brief at 14).  To the extent this Court can even consider this unsupported statement, it would be a factual argument to be evaluated by the jury.  For example, a jury could conclude that in the limited circumstances where a patient calls without having earlier signed a consent form, Malaspina could have obtained a patient's consent the first time he or she called, as suggested by the HHS website excerpt.  *See id.*  Or, a jury could conclude that in those limited circumstances, another person at the office could take the call.

Moreover, a jury could conclude that Defendant could have attempted to enter into a business associate contract with the CapTel provider.  A "business associate" is an entity that performs functions or activities that involve the use or disclosure of protected health information on behalf of, or provides services to, a covered entity.  45 C.F.R. § 160.103.  Instead of obtaining consent from every single patient, a covered entity also has the option of entering into a business associate contract under 45 C.F.R. § 164.502(3).  There is no record evidence Defendant even *considered* entering into

a business associate with the CapTel provider, although Attorney Malloy advised that the interpreter could agree to be bound by UPMC policies. *See* 11/19/12 email chain between D. Crisi-Couchenour and M. Malloy at 324 (App. Ex. 26).

### a. Defendant's significant risk claim, without more, does not excuse its failure to accommodate Malaspina's hearing disability.

Defendant also claims there exists a "very significant risk that the call assistants could make a mistake in describing such things as medication, dosages, tests and using medical terminology." (Def. Brief at 14). This alleged "risk" is entirely speculative and not supported by any record evidence. There is also no evidence that Defendant took any steps to see if this alleged "risk" could be minimized, such as by asking Malaspina to repeat back particularly important information to the person on the other end of the line to be sure it was transcribed correctly. Had Defendant actually tried using the CapTel phone, or had it even conducted a test run with non-patients to confirm whether apparent fears were valid, its argument might have some more weight. But here, Defendant simply assumed that the captioned telephone would not work, and rejected it out of hand.

Defendant has offered nothing more than mere speculation about the probability that allowing a hearing impaired nurse to work would cause harm. In *Verzeni v. Potter*, 109 Fed. Appx. 485, 491-92 (3d Cir. 2004), the Third Circuit held that such employer speculation is not enough.

> For a safety qualification to meet the business necessity defense, it must be based on current medical knowledge about the disability, and on the real risks that the disability may present. Any jury considering this defense should be instructed not to base its determination on unfounded fears, but only on medically accurate facts. Even an employer's good faith actions will not save him if the employer is misinformed about the realities of the disability.

*Id.,* 109 F.Appx. at 491-92, *citing Bragdon v. Abbott*, 524 U.S. 624, 650 (1998); *See also Gaus v. Norfolk Southern Railway Co.*, 2011 WL 4527359 at *30 (W.D. Pa. Sept. 28, 2011).

Finally, Defendant claims the captioned telephone accommodation would not have solved all of Malaspina's problems, because "the record shows beyond dispute that the plaintiff was having

problems with person to person communications." (Def. Brief at 15).  However, Malaspina *does* dispute the extent of the problems Defendant attributes to her.  As noted above, she can more easily understand people when they face her directly, something Defendant's employees did not always do. (LM 39/ln 18-40/ln 23, App. Ex. 12).  Defendant also removed her from patient contact shortly after she received new hearing aids, and potentially while she was still learning how to adjust them. (AS 86/ln. 24-87/ln. 3, App. Ex. 10); (Work Partners Notes at 437, App. Ex. 30); (LM 71/ln 6-12, App. Ex. 12). Because a jury could determine the great majority of Malaspina's hearing difficulties were telephone-related, and because the captioned telephone would have solved that problem, summary judgment is precluded.

Under these circumstances, a rational jury could easily conclude Malaspina's proposed accommodation was not unreasonable, and that it would not pose an undue hardship.  Therefore, summary judgment should be denied as to Malaspina's failure to accommodate claim.

### C.  Summary Judgment is Precluded on Malaspina's Retaliation Claim.

Malaspina alleges Defendant also fired her in retaliation for requesting a reasonable accommodation, in violation of 42 U.S.C. §12203(a).  Defendant only briefly references Malaspina's retaliation claim, again claiming she must point to evidence that a "retaliatory motive actuated her removal from her nursing position." Def. Brief at 11.  However, as noted above, proof of discriminatory or retaliatory animus is not required.  *See, e.g., Patterson,* 2005 WL 6720844 at *8. Rather, Malaspina need only show only show: (1) she engaged in a protected activity; (2) Defendant took an adverse action after or contemporaneous with her protected activity; and (3) a causal link exists between her protected activity and the adverse action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

Defendant concedes Malaspina engaged in protected activity by requesting accommodations

13

for her disability, and that she suffered an adverse action in being removed from her nursing position. Defendant apparently disputes that there was a causal link between Malaspina's protected activity and her adverse action. However, a jury could find otherwise.

Malaspina may rely on a broad array of evidence to establish causation. *Marra*, 497 F.3d at 302. "Unusually suggestive" proximity between the protected activity and adverse action may itself sufficient to establish the requisite causal connection. *Id.* Other circumstantial evidence, including a "pattern of antagonism," is also evidence of causation. *Id.; Woodson v. Scott Paper Co.*, 109 F.3d 913, 922 (3d Cir. 1997).

Here, Malaspina points to both close temporal proximity as well as other evidence of antagonism. Despite Defendant's insistence that Malaspina's hearing disability presented a "liability" as early as February 2012, Defendant retained Malaspina as an employee until it started considering the captioned telephone. During the same time frame that Defendant's employees were discussing CapTel amongst themselves and with Attorney Malloy, they decided to remove Malaspina from patient interaction. *Compare* App. Ex. 26 (discussions of CapTel between Oct. 8 and Nov. 19, 2012); *with* (AS 86/ln. 24-87/ln. 3, App. Ex. 10)(no patient interaction as of Nov. 16, 2012). Thus, within approximately one month of considering the captioned telephone, Defendant would no longer allow Malaspina to treat patients.

Even then, Defendant allowed Malaspina to remain employed. It was not until Human Resources Manager Daniele Crisi-Couchenour told Executive Administrator Jennifer Freel she was confident that Malaspina would sue that Freel decided to fire Malaspina. *See* (11/28/12 email chain, App. Ex. 32). Sometime in the next 8 to 19 days (between December 6 and 17), Freel decided to fire Malaspina. (JF 92/ln 20-93/ln 7, 94/ln 19-95/ln 8, 128/ln 17-21, App. Ex. 2). Thus, a jury could find causation from the very close temporal proximity between Defendant's consideration of her requested

accommodation and its decision to remove her from patient care, as well as the even closer timing between the fear of a lawsuit and the decision to fire Malaspina.

The record is also full of antagonistic behavior toward Malaspina. At the outset, a jury could find Defendant dragged its feet in considering Malaspina's request for an accommodation in the first place. Rossman submitted her evaluation recommending a captioned telephone on June 29, 2012. (Assistive Technology Evaluation, App. Ex. 7). However, there is no record evidence of Defendant even considering the captioned telephone until more than three months later, on October 8, 2012. (11/19/12 email chain at 324, App. Ex. 26). In the interim, Defendant criticized Malaspina's hearing and rated several aspects of her performance "Marginal" based solely on her hearing impairment. (2012 Annual Performance Review, App. Ex. 9). Under these circumstances, a jury could find Defendant's attitude toward Malaspina worsened once she requested the accommodation of a captioned telephone, and that her request for this accommodation was a motivating or determinative factor in Defendant's decision to fire her.

For the foregoing reasons, a reasonable jury could find in Malaspina's favor on all of her claims. Therefore, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

**Samuel J. Cordes & Associates**

/s/ Christine T. Elzer
Samuel J. Cordes
Christine T. Elzer

Pa.I.D. #54874 (Cordes)
Pa. I.D. #208157 (Elzer)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify on this 22nd day of September, 2014, I served a copy of the foregoing *Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment* via the Court's electronic filing system upon the following:

John J. Myers
William S. Myers
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
jmyers@eckertseamans.com
wmyers@eckertseamans.com


/S/ Christine T. Elzer
Christine T. Elzer